IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
: CASE NO. 1:09CR00422
MacROLAND B. HURNS, :
:
Petitioner, :
: MEMORANDUM OF OPINION AND
-vs- : ORDER
:
:
UNITED STATES OF AMERICA, :
:
Respondent.
-------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on petitioner MacRoland B. Hurns' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. (Doc. 80). The petitioner, who pled guilty to six counts of bank robbery, maintains that he received ineffective assistance of counsel. The government has responded in opposition. For the reasons that follow, the petitioner's motion is denied.

**I.**

On 23 September 2009, petitioner Mr. Hurns was charged with two counts of bank robbery in violation of 18 U.S.C. § 2113(a). (Doc. 1). On 31 March 2010, the petitioner filed a motion for a psychiatric examination, which was granted. (Doc. 23). On 4 June 2010, the Court received Mr. Hurns' sealed competency evaluation. (Doc. 40)

On 15 July 2010, a superseding information was filed charging Mr. Hurns with six counts of bank robbery, in violation of 18 U.S.C. § 2113(a). (Doc 45). The same day, a competency hearing was conducted before United States Magistrate Judge Nancy A. Vecchiarelli. Judge Vecchiarelli concluded that Mr. Hurns was competent to stand trial, as he did not meet "the criteria for a formal mental disorder and is mentally competent to understand the nature and circumstances of the proceedings against him and is able to assist in his defense." (Doc. 47).

On 29 November 2010, Mr. Hurns appeared before the Magistrate Judge and entered a guilty plea to all six counts of the superseding information. (Doc. 57; 58, p. 37). On 27 December 2010, this Court accepted Mr. Hurns' plea of guilty. (Doc. 59). There was no written plea agreement.

On 17 May 2011, Mr. Hurns filed his Sentencing Memorandum under seal, along with a psychological assessment. (Doc. 63). On 18 May 2011, the government filed a sentencing memorandum (Doc. 64), and Mr. Hurns responded. (Doc. 65).

On May 19, 2011, a sentencing hearing was held. The Court determined that Mr. Hurns' combined adjusted offense level was 29. (Doc. 73, p. 10). Since Mr. Hurns was found to be a career offender under U.S.S.G. § 4B1.1, his combined adjusted offense level was increased to 32. (Id., p. 11). Once a three-level reduction for acceptance of responsibility was accounted for, Mr. Hurns' adjusted offense level was 29. With a Criminal History Category VI, the advisory Guidelines range was 151 to 188 months on each count. (Id., pp. 10-11, 18).

After considering the relevant § 3553 factors, the Court sentenced Mr. Hurns to 170 months imprisonment on each of the six counts. (Doc. 67; Doc. 73, p. 32). The

sentences were to be served concurrently, followed by three years of supervised release and a $600 special assessment. Mr. Hurns was ordered to pay restitution in the amount of $9,683.01. (Doc. 67; Doc. 73, pp. 32-33).

Mr. Hurns timely appealed to the Sixth Circuit. He argued that his sentence was procedurally unreasonable because the Court erroneously determined he was armed during some of the bank robberies; that the Court failed to consider relevant mitigating factors, such as his troubled childhood, low intelligence, and mental health issues; and that the Court failed to address his arguments that his criminal history was overrepresented and his sentence was disparate from that of his co-defendant. The Sixth Circuit affirmed the Court's judgment, stating:

> Hurns argues that the district court failed to consider mitigating factors such as his troubled childhood and low intelligence. Review of the transcript, however, shows that the district court specifically discussed defendant's background and took those issues into consideration. The argument that the criminal history category is overrepresented is meritless. Hurns argues that the two robberies that provided the basis for his career offender status were committed when he was nineteen years old, and that he had no further serious offenses until the bank robberies at age 35. However, Hurns was in prison for a good part of that period, and he had enough criminal history points to be in category VI even without being found a career offender. Finally, Hurns argues that his sentence is disparate when compared to that of his co-defendant. However, the government countered that the co-defendant was convicted of only two bank robberies, acted as the driver rather than the actual robber, and had a much lower criminal history score. Moreover, sentence disparity as a factor refers to other defendants nationwide with similar convictions and criminal histories, not necessarily to co-defendants.

United States v. Hurns, 468 Fed. Appx. 542, 543, 2012 WL 934022 (6th Cir. 2012) (unpublished).

Now before the Court is Mr. Hurns' Motion to Vacate pursuant to 28 U.S.C. § 2255, in which he argues that his lawyer was ineffective to his prejudice. (Doc. 80).

3

**II.**

Pursuant to 28 U.S.C. § 2255(b),

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b). To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). It is well-settled "that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982)).

If the record includes a factual dispute, the district court "must hold a hearing to determine the truth of the [petitioner's] claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir.1999). Petitioner is not entitled to a hearing, however, "if the files and records of the case conclusively show that he is not entitled to relief." Green v. United States, 65 F.3d 546, 548 (6th Cir.1995).

4

**III.**

Under Strickland, there are two components to an ineffective assistance of counsel claim: constitutionally deficient representation and prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show that representation was constitutionally deficient, the petitioner must demonstrate that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable,"

> every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id.

To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When applying Strickland, if the Court can more easily dispose of an ineffective assistance claim based on lack of prejudice, it should follow that route. Watson v. Marshall, 784 F.2d 722, 726 (6th Cir.1985).

5

**IV.**

The petitioner argues that his attorney Debra Migdal provided ineffective assistance on a number of grounds: that attorney Migdal failed to pursue a plea agreement with the government; that she failed to review his PSR, which barred him from withdrawing his guilty plea; that she failed to seek relief on the grounds of his mental and learning disabilities; that she failed to argue disparate sentences between Mr. Hurns and his co-defendant, Alan Brown; that she failed to challenge his criminal history category; that she incorrectly advised him that if he entered his guilty plea he would not be subject to sentence greater than 105 months; and that she obstructed his right to appeal. The Court addresses, and rejects, each argument in turn.

First, the petitioner claims that attorney Migdal failed to seek a plea agreement with the government on his behalf. He argues that by failing to do so, his lawyer provided ineffective representation. The petitioner's factual claim is plainly contradicted by the record. During Mr. Hurns' change of plea hearing, the petitioner was placed under oath and the following colloquy took place:

> THE COURT: All right. Now, before I -- if there is no plea agreement, I want to make sure that we have a record, and I don't want to know the details of anything that has been offered, but I just want to ask, has the Government offered anything by way of a plea agreement in this case?
>
> MR. RIEDL: Your Honor, there was a plea agreement prepared in this case. That plea agreement, however, indicated that the defendant would enter a guilty plea to the six counts that are currently in the Information. The Government agreed to a within-Guideline sentence, also asked the defendant to agree to a within-Guideline sentence. The Government agreed to the three points for acceptance of responsibility. So, essentially, it is going to be very similar to what the defendant gets by pleading straight up, however, the Government will not be agreeing here to a within-Guideline sentence or to the third point for acceptance. At this point, we have no reason to believe he won't get the third point for acceptance, but there is no agreement on the record,

6

> THE COURT: All right. Let me ask Ms. Migdal, have you conveyed all plea offers that have been made by the Government to the defendant?
>
> MS. MIGDAL: Yes, Your Honor.
>
> THE COURT: Okay. Have you heard everything that was said here so far, Mr. Hurns?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand it all?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you have any reason to believe that anything that was said is inaccurate?
>
> THE DEFENDANT: No, ma'am

(Doc. 58, pp. 5-6). Based on the record, Mr. Hurns acknowledged, while he was under oath, that the government made a plea offer and that Ms. Migdal communicated that offer to him. Other than a conclusory assertion otherwise, the petitioner offers nothing at this time that would undermine the facts as they were established during the change of plea hearing. Therefore, the petitioner's present claim that his lawyer never conveyed any plea offer to him, being "palpably incredible" and "patently frivolous," is rejected. See Peavy v. United States, 31 F.3d 1341, 1345 (6th Cir.1994).

Similarly, the Court rejects the petitioner's contention that his attorney failed to review the PSR with him. The following exchange occurred during the change of plea hearing:

> MS. MIGDAL: A pre-sentence report has been prepared previously and reviewed by myself and Mr. Hurns.
>
> THE COURT: Okay. Mr. Hurns, have you seen the pre-sentence report?
>
> THE DEFENDANT: Yes, ma'am.

(Doc. 58, p. 11). The record disproves Mr. Hurns' claim that Ms. Migdal failed to review the PSR with him. The petitioner's claim is accordingly rejected.

Mr. Hurns also complains that Ms. Migdal failed to seek a departure or variance based on his mental and learning disabilities, but the Court's review of counsel's sealed sentencing memorandum reveals that the petitioner's claim is incorrect. Ms. Migdal expressly requested that the Court consider the petitioner's mental health issues and learning disabilities when determining his sentence. (Doc. 63, pp. 2-7). Counsel discussed at length two psychological evaluations of the petitioner, his abusive childhood, and his problems with drug abuse. Id. As such, the petitioner's claim that counsel failed to properly seek relief based on his disabilities is patently false.

The petitioner next indicates that his co-defendant Alan Brown, who pled guilty to two counts of bank robbery, received a sentence of 33 months followed by three years of supervised release. Mr. Hurns states that he, in contrast, received significantly more prison time--170 months. The petitioner argues that his lawyer failed to urge the Court to avoid such a sentencing disparity. However, the record shows that Ms. Migdal did just that. On page 11 of her sentencing memorandum, counsel "request[ed] a downward variance to avoid an unwarranted sentencing disparity between the co-defendants in this case. (Doc. 63, p. 11).

The petitioner also argues that counsel was ineffective for her alleged failure to challenge his criminal history category calculation. This argument is also rejected. The record shows that Ms. Migdal did challenge the petitioner's criminal history, arguing that

8

"the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." (Doc. 63, pp. 9-10).

The petitioner next claims that his lawyer incorrectly advised him that if he entered his guilty plea he would not be subject to sentence greater than 105 months. This claim, like the others, is plainly contradicted by the record, as the record shows that Mr. Hurns was advised that he could face a sentence greater than 105 months if he pled guilty. The pre-plea PSR, which was prepared months before Mr. Hurns entered his plea, concluded that Mr. Hurns qualified as a career offender based on his prior convictions. At the plea hearing, the government stated its intention to argue that Mr. Hurns was a career offender with a base offense level 32, with a guideline range of 210-240 months prior to acceptance of responsibility. Mr. Hurns acknowledged that he understood the guidelines, the government's position, and that his sentence was within the Court's discretion. Furthermore, the following exchange occurred during the change of plea hearing:

> THE COURT: Do you understand that the maximum possible penalty for each count is 20 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment on each count? Do you understand all that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that it is the Government's position that you are a Career Offender, and that would put you at a criminal history category of VI. Your counsel contests that. The Government's position at this point is under the advisory Sentencing Guidelines, you would be an offense level 32 without consideration for acceptance of responsibility, which they may or may not agree to at the time of sentencing. Do you understand all of that?
>
> THE DEFENDANT: Yes, ma'am.
>
> * * *

9

> THE COURT: And do you understand the Court must consider the advisory Sentencing Guidelines and the factors under the Federal statutes in determining what sentence to impose, and may depart or vary from the sentencing guideline, the advisory sentencing guideline range?
>
> THE DEFENDANT: Yes, ma'am.

(Doc. 58, pp. 21-22). In addition, Mr. Hurns affirmed during the hearing that his guilty plea was not induced by any promise of counsel:

> THE COURT: All right. Now, Mr. Hurns, do you acknowledge that your offer to plead guilty is freely and voluntarily made, and that no threats, promises or representations have been made nor agreements reached, other than those that have been set forth in court here today to induce you to plead guilty?
>
> THE DEFENDANT: Yes, ma'am

(Doc. 58, pp. 30-31). Therefore, based on the record, Mr. Hurns' conclusory assertion that he was advised by his lawyer that he would not face a sentence greater than 105 months is patently false.

Finally, the Court rejects the petitioner's contention that Ms. Migdal somehow "obstructed" his right to appeal. Review of the case docket shows that Mr. Hurns did timely appeal his sentence to the Sixth Circuit, making it unclear how his appeal was obstructed.

**V.**

For the reasons stated above, the petitioner's motion to vacate is denied.

IT IS SO ORDERED.

    /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Date: 14 November 2014